**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BARBARA A. WILLIAMS,**<br><br>Plaintiff,<br><br>v.<br><br>**DAVIDSON,** *et. al.*,<br><br>Defendants. | Civil Action No. 16-8339 (ES) (JAD)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is defendants International Brotherhood of Electrical Workers ("IBEW") System Council No. 7 and IBEW Local 604's ("Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (D.E. No. 69). Having considered the parties' submissions in support of and opposition to the pending motion, the Court decides the motion without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, the Court GRANTS–IN–PART Defendants' motion for summary judgment.

**I.     Background**[1]

Plaintiff Barbara A. Williams ("Plaintiff") began working for New Jersey Transit Rail Operations ("NJT") in 1982 and is currently a Substation Electrician. (D.E. No. 30, Amended

---

[1] The Court derives the factual background from the Amended Complaint and Defendants' statement of material facts pursuant to Local Civil Rule 56.1. *See* L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment"); *see also Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017) ("[A] movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts . . . receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion.").

1

Complaint ("Am. Compl.") ¶ 16).  The IBEW is the authorized collective bargaining representative for electrical workers employed by NJT, and IBEW Local 604 and System Council No. 7 handle the day-to-day representational activities for NJT electrical workers.  (D.E. No. 69-6, Defendants' Joint Statement of Materials Facts ("SMF") ¶ 1).  "The terms and conditions of employment of NJT employees working as electrical workers in the Electric Traction Department are governed by a collective bargaining agreement [("CBA")] between the IBEW and NJT."  (*Id.* ¶ 2).  The CBA sets forth the procedures for handling claims that NJT violated a provision of the agreement; and to successfully pursue such a claim, the union must rely on a rule in the CBA that has been violated, otherwise the claim has no validity.  (*Id.* ¶¶ 7–8).  Initially, Local 604 handles any claims and grievances filed by electrical workers and decides if the claim has sufficient merit to warrant presenting it to NJT.  (*Id.* ¶ 5).  Meritorious claims are then presented to NJT for additional processing.  (*Id.*).  "System Council No. 7 handles negotiations with NJT for changes to existing collective bargaining agreements and appeals to higher levels of NJT management from NJT's denial of claims and disciplinary appeals presented by Local 604."  (*Id.* ¶ 6).

In her Amended Complaint,[2] Plaintiff alleges that Defendants treat her differently from male employees in a number of ways.  Although the Amended Complaint is not a model of clarity, the Court gathers that the complained of conduct includes: (i) the way in which Defendants process her grievances compared to male employees' grievances (Am. Compl ¶ 15); (ii) the amount she is paid compared to her male counterparts (*id.* ¶¶ 8 & 12–14); and (iii) the lack of promotions and job opportunities available to her (*see* D.E. No. 30-1 at 4–5 (ECF Pagination)).  Based on these allegations, Plaintiff brings claims for violations of (i) Title VII of the Civil Rights Act of 1964,

---

[2] The Court partially dismissed Plaintiff's original complaint and granted Plaintiff leave to file an amended complaint that addressed the deficiencies identified in the Court's February 16, 2018 Letter Memorandum.  (D.E. No. 21).  Plaintiff filed the Amended Complaint on June 22, 2018.

42 U.S.C. § 2000e, *et seq.*, ("Title VII");[3] (ii) the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"); and (iii) the New Jersey Equal Pay Act, N.J.S.A. § 34:11-56.2 ("NJEPA"). (Am. Compl. ¶ 1).

Defendants move for summary judgment, arguing that Plaintiff has failed to establish a prima facie case of Title VII discrimination or discrimination under the NJLAD, and that there is no viable claim under the NJEPA against Defendants. (D.E. No. 69-5 ("Def. Mov. Br.") at 10–13). Plaintiff filed a two-page opposition to this motion, which consists of nothing more than unsupported assertions that mirror some of the allegations in the Amended Complaint. (*See* D.E. No. 70). Defendants filed a reply brief (D.E. No. 71), and briefing was concluded on December 17, 2019. Nearly three months later, without providing a reason for the delay, Plaintiff filed a one-page supplemental submission enclosing over one thousand pages of "evidence [t]o [r]ebut [e]rroneous information Defendants have [s]ubmitted." (*See* D.E. No. 73). Defendants moved to strike Plaintiff's supplemental submission as untimely. (D.E. No. 74). Although the Court agrees with Defendants that Plaintiff's supplemental submission is "untimely and not incompliance with the Court's earlier orders," (*id.* at 1), considering Plaintiff's *pro se* status, the Court will exercise its discretion to consider the untimely supplemental evidence, which ultimately does not change the Court's conclusion. *Weed-Schertzer v. Nudelman, Klemm & Golub*, No. 10-6402, 2011 WL 4436553, at *1 n.1 (D.N.J. Sept. 23, 2011), *report and recommendation adopted,* No. 10-6402, 2011 WL 4916309 (D.N.J. Oct. 13, 2011) (exercising the court's "broad discretion" to consider untimely filings).[4]

---

[3] Counts One and Two in the Amended Complaint both reference the Civil Rights Act of 1964 and could be interpreted as duplicative of one another. (Am. Compl. ¶¶ 4 & 10–11). However, because Plaintiff references the NJLAD (*id.* ¶ 1), the Court interprets Count One as a claim for discrimination under state law and Count Two as a claim for discrimination under Title VII.

[4] The supplemental submission does not contain a brief or a counter statement of material facts. (*See* D.E. No. 73). Moreover, the additional evidence is voluminous, unorganized, annotated, and sometimes difficult to read.

3

## II. Legal Standard

A court shall grant summary judgment under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. *Id.* Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* at 247-48.

An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.* On a summary-judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most

---

Although the Court affords Plaintiff's submissions liberal interpretation, *see Schiereck v. Twp. of Mullica*, No. 06-1674, 2009 WL 1545904, at *5 (D.N.J. May 27, 2009), it is not the Court's job to make Plaintiff's arguments for her. *See Davila v. Commonwealth of PA*, No. 11-1092, 2016 WL 873237, at *7 (M.D. Pa. Jan. 20, 2016), *report and recommendation adopted sub nom. Davila v. Commonwealth of PA*, No. 11-1092, 2016 WL 861884 (M.D. Pa. Mar. 7, 2016) ("It [is] a litigant's duty to point to specific parts of the record that support his or her contentions; it is not the Court's job to comb through the record looking for evidence to support the claims.").

favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

A *pro se* plaintiff is not exempt from these rules. At summary judgment, a *pro se* plaintiff must provide more than mere allegations to establish a prima facie case and show that there is a genuine dispute for trial. *See Barnett v. N.J. Transit Corp.*, 573 F. App'x. 239, 243 (3d Cir. 2014) (holding that a *pro se* plaintiff was still "required to designate specific facts . . . sufficient to convince a reasonable fact finder to find all the elements of [her] prima facie case") (internal quotation marks omitted).

**III.    Analysis**

    **A.    Title VII Discrimination Claims**

Title VII prohibits intentional "employment discrimination on the basis of race, color, religion, sex, or national origin" (disparate treatment claims), and makes unlawful policies or practices "that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities" (disparate impact claims). *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). In order to prove a prima facie case of discrimination, a plaintiff must prove that "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). A motion for summary judgement in favor of defendants will be granted if "a plaintiff has raised no genuine issue of material fact as to one or more of the elements of a prima facie case of employment discrimination." *Lemke v. Int'l Total Servs.*, 56 F. Supp. 2d 472, 483 (D.N.J. 1999). Alternatively, a summary judgment motion will be granted if "defendants have presented legitimate non-discriminatory reasons for the adverse employment action to which plaintiff points

and plaintiff has not raised a genuine issue of material fact as to whether the reasons proffered are a mere pretext for gender discrimination." *Id.*

"Under Title VII, a Union is barred from discriminating against its members based on race, color, religion, sex, or national origin." *Martinez v. Int'l Bhd. of Elec. Workers-IBEW Local Union No. 98*, 352 F. App'x 737, 740 (3d Cir. 2009) (citing 42 U.S.C. § 2000e-2(c)). But "[w]hile a union may be held liable under Title VII, the record [must] demonstrate that the Union *itself* instigated or actively supported the discriminatory acts allegedly experienced by [Plaintiff]." *See Anjelino v. New York Times Co.*, 200 F.3d 73, 95–96 (3d Cir. 1999) (emphasis in original). In other words, a "[u]nion cannot be held liable for . . . alleged discrimination . . . unless the [u]nion took an active role in the discrimination." *See, e.g.*, *Martinez*, 352 F. App'x at 740.

Plaintiff's Title VII disparate treatment claims center around Defendants' claims and grievances process. First, Plaintiff generally complains about Defendants' processing of her grievances compared to the grievances of similarly situated male employees. (Am. Compl. ¶ 6). Plaintiff alleges that Defendants' website "mysteriously disappeared" after she submitted grievances, and that Defendants' only response was that said grievances lacked merit and more documentation was needed. (*Id.* ¶¶ 15–16). Plaintiff also alleges that her grievances were processed "at [a] total processing level less than male[] members similarly situated." (*Id.* ¶ 6). Second, Plaintiff alleges that she was passed up for certain promotional opportunities that were given to male employees. (D.E. No. 30-1 at 7 (ECF Pagination)). Because Defendants do not have any say in the promotion process (SMF ¶ 15), the crux of this allegation appears to be that Defendants should have pursued her grievances regarding various promotions. Third, Plaintiff makes a similar allegation that Defendants failed to pursue her grievances with respect to her compensation, which she alleges is lower than the compensation of similarly situated male union

members. (Am. Compl. ¶¶ 12–14).[5]

Plaintiff has not come forward with any evidence to support her allegations that Defendants processed any of her grievances differently from her male counterparts. As a preliminary matter, the allegations in the Amended Complaint regarding Defendants' handling of Plaintiff's grievances are largely vague and conclusory.[6] But more importantly, as is relevant for this motion, Plaintiff fails to provide any evidence to even suggest an inference of discrimination, as she is required to do at the summary judgment stage. *See Barnett*, 573 Fed. App'x at 243. In her supplemental submission, Plaintiff submits over a thousand pages of "evidence" that largely consists of her own grievances and emails back and forth with Defendants' employees. (*See, generally* D.E. Nos. 73-1 to 73-16). But this evidence of Plaintiff's grievances does not demonstrate how other similarly situated male employees were treated any differently from her and, alone, does not raise any inference of discrimination based on sex. Without any evidence raising the inference of discriminatory action by Defendants, Plaintiff has failed to make out her prima facie case of discrimination, and Defendants are entitled to judgement as a matter of law on this basis alone.[7] *See Rich v. Verizon New Jersey Inc.*, No. 16-1895, 2017 WL 6314110, at *24 (D.N.J. Dec. 11, 2017) (explaining that general allegations of favorable treatment are insufficient

---

[5] In summarizing Plaintiff's claims, the Court liberally construes the Amended Complaint. The Court's analysis applies to any other Title VII allegations that can be discerned from the Amended Complaint, as Plaintiff has completely failed to put forth any evidence to raise the inference of discriminatory action.

[6] This is particularly true with respect to the failure to promote claims, which are nearly non-existent in the Amended Complaint. In the document attached to the Amended Complaint, the Court discerns a few allegations about certain male employees being promoted. (D.E. No. 30-1 at 4–5). But many of them are undated, and thus the Court cannot discern whether they are actionable. (*See* D.E. No. 21 at 2 (dismissing *with prejudice* Plaintiff's Title VII claims involving conduct that occurred before January 2, 2016)).

[7] Some of Plaintiff's other evidence suggests that she is improperly trying to prove that Defendants are liable for certain allegedly discriminatory acts taken by NJT, rather proving how Defendants specifically discriminated against her in the grievance process. *See Anjelino*, 200 F.3d at 95–96. For example, Plaintiff submits a 200-page exhibit that includes descriptions of job postings and points out that those jobs were awarded to male employees. (*See* D.E. No. 73-11 at 104, 109 & 159 (ECF Pagination)). But at best, this evidence shows that NJT (not Defendants) promoted males, and it does not raise any inference of discriminatory action by Defendants.

to establish an inference of discrimination under a Title VII claim).

Moreover, even if Plaintiff had submitted evidence to establish a prima facie case of discrimination, Defendants have come forward with unrebutted evidence explaining how Plaintiff's various grievances were processed, why they were handled a certain way, and that Plaintiff's grievances were processed the same way that a male employee's similar grievances would be processed. Specifically, with respect to the promotion process, Defendants explain that NJT retains the unilateral discretion to elevate employees to certain positions. (SMF ¶ 11). As a result, NJT's failure to promote an employee—male or female—to these positions does not constitute any violation of the CBA, and a violation of the CBA is required for the Defendants to be able to bring a claim. (*Id.* ¶¶ 7–8). Thus, as Defendants explain, Williams' claims that she was wrongfully denied promotions to vacant supervisory positions had no merit and were not pursued for that reason, not because of her sex. (*Id.* ¶ 14).[8] Moreover, with respect to Plaintiff's grievances about her pay, Defendants explain that, although Plaintiff may have, at times, taken on certain supervisory activities on her own accord, she was not entitled to additional pay pursuant to the CBA. (*Id.* ¶¶ 26–32). Thus, Defendants explain that Local 604 "followed the same claims-handling procedures for both men and women" with respect to any of Plaintiff's claims that she should have received additional compensation for work outside of her normal job functions. (*Id.* ¶ 34). Defendants' cited evidence demonstrates that Local 604 had specific reasons—under the governing CBA—for how and why it processed Plaintiff's various grievances. Indeed, some of Plaintiff's own evidence highlights these reasons. (*See, e.g.*, D.E. No. 73-6 at 57 (ECF Pagination) (email from President of Local 604 to Plaintiff explaining that the CBA is the guiding document, and under that document there was not enough evidence to bring a claim on her behalf)). As such,

---

[8] Defendants also explain that Williams has not applied for a supervisory position since September 2015 (SMF ¶ 13), and that, despite being able to bid on certain job opportunities, Williams did not do so. (*Id.* ¶ 25).

even if Plaintiff had demonstrated a prima face case of discrimination, she has not raised a genuine issue of material fact as to whether these reasons proffered are a mere pretext for gender discrimination. *Lemke*, 56 F. Supp. 2d at 483.

Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII claims.

### B. NJLAD and NJEPA Claims

Plaintiff's only remaining claims—under the NJLAD and NJEPA—are state law claims over which the Court lacks original jurisdiction. "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999). Here, the Court exercises its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See Cindrich v. Fisher*, 341 F. App'x 780, 789 (3d Cir. 2009). Accordingly, Plaintiff's state law claims are dismissed *without prejudice.*

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment with respect to the Title VII claims and dismisses the remaining state law claims *without prejudice*. An appropriate Order accompanies this Opinion.

                                                           s/ *Esther Salas*
                                                           **Esther Salas, U.S.D.J.**